The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Morgan Chapman. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. Defendants last paid compensation to plaintiff on September 14, 1995.
A Pre-trial Agreement dated August 20, 1996 was submitted by the parties and is incorporated by reference. The medical records and reports attached to the agreement were stipulated into evidence. In addition, the parties subsequently stipulated into evidence an addendum report by Mr. Carpenter dated February 10, 1997.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. Plaintiff, who is fifty-seven years old and a high school graduate, began working for defendant-employer in approximately 1990. Defendant-employer was a company which manufactured a large variety of metal parts. As of May 6, 1992, plaintiff's job with the company involved primarily sanding parts which varied in weight from one to one hundred pounds. She sustained a compensable injury by accident on that date when she slipped on oil as she was walking around a machine and slid into a brick wall. As a result of the accident, she injured her low back and some fingers. Defendants subsequently admitted liability for benefits under the Workers' Compensation Act for her injury pursuant to a Form 21 agreement which was approved by the Industrial Commission.
2. Dr. Jarrett, an orthopedic surgeon, treated plaintiff for her back injury. After a CT scan revealed a large disk at L3-4 and after conservative treatment did not relieve her symptoms, he performed surgery on July 1, 1992 to decompress the L3-4 interspace. Following the operation, plaintiff initially did well and in September Dr. Jarrett released her to return to work at her request. She returned to work but experienced problems with the standing and lifting required by her job. On January 5, 1993 she went back to Dr. Jarrett reporting that the pain had recurred. At that time he noted that she had almost no reflexes in her ankles. He treated her with medication until March 23, 1993 when she returned with complaints of severe back pain and with moderate muscle spasm. At that time he took her out of work.
3. Plaintiff was released to return to work in May 1993 but by that time defendant-employer had terminated her because she was unable to perform her job duties. She developed recurrent pain by the end of that month and was placed at bed rest for a few days. Since she continued to experience persistent symptoms, Dr. Jarrett subsequently referred her for a second opinion to Dr. Rhoton, a neurosurgeon. Dr. Rhoton examined her on August 23, 1993. She complained to him of disabling pain in her back and both legs. He then ordered an MRI which did not show any ongoing nerve root compression but which revealed epidural fibrosis, or scar tissue formation along the spinal canal and nerve root.
4. In view of the MRI findings, Dr. Rhoton did not recommend further surgery but suggested a work hardening program. Consequently, plaintiff was admitted to the program at Asheville Rehabilitation Center under the supervision of Dr. Johnson. She also underwent an epidural block which gave her some relief. The rehabilitation program lasted for about a month until November 17, 1993. Plaintiff initially made good progress, but she developed worse pain after a couple of weeks and did not obtain much more improvement. Despite her continuing symptoms, however, she did regain some function as a result of the program and she was released to return to work at sedentary or possibly light level work.
5. Plaintiff continued to receive periodic epidural blocks which would give her some relief from the pain for a number of weeks. From late April to early June 1994, she worked with Rick Ensley, a vocational consultant, regarding finding alternative employment since she was not able to perform her previous job with defendant-employer. However, he closed his file at the request of the insurance carrier. Plaintiff otherwise made some effort to find employment but, since she could not sit or stand for prolonged periods, she did not expect to find suitable work. Furthermore, defendants stopped paying compensation to her on several occasions so she suffered from financial problems and lost her car. Without transportation she was handicapped in looking for work.
6. On July 19, 1994 plaintiff saw Dr. Mackel, an orthopedic surgeon. He gave her restrictions against lifting more than fifteen pounds, and that amount only rarely, against prolonged sitting or standing and against repeated bending or twisting at the waist. He recommended that she change positions frequently.
7. In September 1994 plaintiff was evaluated by Stephen Carpenter, a vocational consultant. She displayed such strong pain and emotional behaviors that he was unable to properly assess her capabilities. He recommended that she get immediate psychological therapy because of her apparent depression and distress, and he concluded that she was not employable at that time.
8. There was no record of further medical treatment in evidence until March 28, 1995 when plaintiff saw Dr. Hoski, another orthopedic surgeon. At that time she continued to complain of severe pain which prevented her from engaging in activities and which limited her sleep. Dr. Hoski found muscle spasm on examination and no evidence of symptom magnification. He thought that she might benefit from a functional restoration program which would address the psychological aspect of her problem since she appeared to not be dealing well with the pain. However, there was no specific evidence indicating that she ever received treatment for the emotional distress she experienced due to her chronic pain. She returned to Mr. Carpenter in January 1997 and reported that she was taking some medication for her depression, but he continued to note inappropriate behavior and apparent problems with attention and concentration. In his opinion, she was still not employable.
9. Although plaintiff has reached maximum medical improvement from a physical standpoint from the back injury she sustained on May 6, 1992, she has not reached maximum medical improvement from a psychological standpoint and will require treatment for her psychological response to the chronic pain from she has continued to suffer.
10. As a result of the injury by accident giving rise to this claim and the resulting epidural fibrosis, plaintiff has remained unable to work in any capacity since her termination by the company in approximately May 1993. She has continued to experience chronic pain which has waxed and waned and which has led to psychological distress. In view of her age and limitations, it would be quite difficult for her to find work which she could perform. Defendants have not proven that there was suitable work available in her area which she could have obtained and performed.
11. Defendants have terminated payment of compensation on several occasions without approval of the Industrial Commission.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff is entitled to compensation for temporary total disability at the rate of $174.18 per week from September 15, 1995 through the date of hearing on August 21, 1996 and continuing thereafter for as long as she remains so disabled. G.S. § 97-29.
2. Plaintiff is entitled to receive a penalty in the amount of ten percent of all compensation which was not paid within the time allowed by G.S. § 97-18 in addition to the compensation awarded. G.S. § 97-18.
3. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident, including treatment for the psychological condition resulting from her injury. G.S. § 97-2 (19); G.S. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay compensation to plaintiff for temporary total disability at the rate of $174.18 per week from September 15, 1995 through August 21, 1996 and continuing thereafter for as long as she remains so disabled. That portion of this compensation which has accrued shall be pain in a lump sum. This award is subject to the attorney's fee hereinafter approved.
2. In addition to the compensation awarded, defendants shall pay a penalty to plaintiff in the amount of ten percent of all compensation which was not paid within the time allowed by G.S. § 97-18. This compensation has also accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident, including those arising from the psychological treatment authorized.
4. Defendants shall pay for the evaluations of plaintiff by Mr. Carpenter.
5. An attorney's fee in the amount of twenty-five percent of the compensation and penalties awarded is approved for plaintiff's counsel. He shall receive a lump sum from the accrued compensation and shall thereafter receive every fourth check.
6. Defendants shall pay an expert witness fee in the amount of $95.00 to Mr. Carpenter for his testimony in the case.
7. Defendants shall pay the costs.
This the ___ day of March 1998.
 S/ ____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ______________ CHRISTOPHER SCOTT COMMISSIONER
S/ ______________ DIANNE C. SELLERS COMMISSIONER
TJB/cnp/db